1

2 **UNITED STATES DISTRICT COURT**

3 **DISTRICT OF NEVADA**

4 * * *

5 Andrew J. Arrand,                                    Case No. 2:20-cv-00694-BNW

6                           Plaintiff,

7         v.                                           **ORDER**

8 Commissioner of Social Security,

9                           Defendant.

10

11        This case involves review of an administrative action by the Commissioner of Social

12 Security denying Plaintiff Andrew J. Arrand's application for disability insurance benefits under

13 Title II of the Social Security Act. The Court reviewed Plaintiff's Motion for Summary Judgment

14 (ECF No. 32), filed February 16, 2021, and the Commissioner's Motion to Remand and Response

15 to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 33, 34), filed March 15, 2021.

16 Plaintiff filed a reply on April 19, 2021. ECF Nos. 37. 38.

17        The parties consented to the case being heard by a magistrate judge in accordance with 28

18 U.S.C. § 636(c) on April 16, 2020. ECF No. 4. This matter was then assigned to the undersigned

19 magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

20 **I.      BACKGROUND**

21        **1.      Procedural History**

22        On November 4, 2013, Plaintiff applied for disability insurance benefits under Title II of

23 the Act, alleging an onset disability date of September 27, 2010. ECF No. 26-1[1] at 153–54. His

24 claim was denied initially and on reconsideration. *Id*. at 115–19; 120–23. A hearing was held

25 before an Administrative Law Judge ("ALJ") on November 23, 2015. *Id*. at 34–76; ECF No. 26-2

26 at 384–426. On January 22, 2016, ALJ Cynthia R. Hoover issued a decision finding that Plaintiff

27

28        [1] ECF No. 26 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 26).) All citations to the Administrative Record will use the CM/ECF page numbers.

1  was not disabled. ECF No. 26-1 at 13–29; ECF No. 26-2 at 337–53. The ALJ's decision became

2  the Commissioner's final decision when the Appeals Council denied review on April 22, 2016.

3  ECF No. 26-1 at 7–9; ECF No. 26-2 at 319–21.

4       Plaintiff filed suit for judicial review 42 U.S.C. §§ 405(g). ECF No. 26-2 at 329–31. The

5  district court remanded the case to the ALJ, ordering the ALJ to give great weight to the

6  Department of Veterans Affairs' 100 percent disability rating. *Id.* at 364–71. A new hearing was

7  held before the same ALJ on November 18, 2019. *Id.* at 276–308. On January 14, 2020, the ALJ

8  issued a decision finding that Plaintiff was not disabled. *Id.* at 254–68. Plaintiff, on April 16,

9  2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g).[2] *See* Compl.

10 (ECF No. 1).

11 **II.    DISCUSSION**

12      **1.    Standard of Review**

13      Administrative decisions in Social Security disability benefits cases are reviewed under 42

14 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

15 provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

16 made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

17 obtain a review of such decision by a civil action . . . brought in the district court of the United

18 States for the judicial district in which the plaintiff resides." The court may enter "upon the

19 pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

20 decision of the Commissioner of Social Security, with or without remanding the cause for a

21 rehearing." 42 U.S.C. § 405(g).

22      The Commissioner's findings of fact are conclusive if supported by substantial evidence.

23 *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

24 findings may be set aside if they are based on legal error or not supported by substantial evidence.

25 *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

26

27      [2] Because Plaintiff's case was remanded for further proceedings before an Administrative Law Judge, the ALJ's subsequent decision became the Commissioner's final decision unless the Appeals Council took jurisdiction, which it did not. This means that Plaintiff did not have to appeal the ALJ's post-remand decision to the Appeals Council but, instead, could file suit immediately.

28

1   278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

2   mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

3   might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

4   Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

5   whether the Commissioner's findings are supported by substantial evidence, the court "must

6   review the administrative record as a whole, weighing both the evidence that supports and the

7   evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

8   720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

9           Under the substantial evidence test, findings must be upheld if supported by inferences

10  reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

11  When the evidence will support more than one rational interpretation, the court must defer to the

12  Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

13  *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

14  before the court is not whether the Commissioner could reasonably have reached a different

15  conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

16  the ALJ to make specific findings so that the court does not speculate as to the basis of the

17  findings when determining if the Commissioner's decision is supported by substantial evidence.

18  Mere cursory findings of fact without explicit statements as to what portions of the evidence were

19  accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

20  The ALJ's findings "should be as comprehensive and analytical as feasible, and where

21  appropriate, should include a statement of subordinate factual foundations on which the ultimate

22  factual conclusions are based." *Id.*

23          **2.      Disability Evaluation Process**

24          The individual seeking disability benefits has the initial burden of proving disability.

25  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

26  demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

27  determinable physical or mental impairment which can be expected . . . to last for a continuous

28

1 period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

2 must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R.

3 § 404.1514. If the individual establishes an inability to perform his prior work, then the burden

4 shifts to the Commissioner to show that the individual can perform other substantial gainful work

5 that exists in the national economy. *Reddick*, 157 F.3d at 721.

6       The ALJ follows a five-step sequential evaluation process in determining whether an

7 individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

8 at any step the ALJ determines that she can make a finding of disability or non-disability, a

9 determination will be made, and no further evaluation is required. *See* 20 C.F.R.

10 § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

11 determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R.

12 § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

13 doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If

14 the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not

15 engaged in SGA, then the analysis proceeds to step two.

16       Step two addresses whether the individual has a medically determinable impairment that

17 is severe or a combination of impairments that significantly limits him from performing basic

18 work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe

19 when medical and other evidence establish only a slight abnormality or a combination of slight

20 abnormalities that would have no more than a minimal effect on the individual's ability to work.

21 *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[3] If the

22 individual does not have a severe medically determinable impairment or combination of

23 impairments, then a finding of not disabled is made. If the individual has a severe medically

24 determinable impairment or combination of impairments, then the analysis proceeds to step three.

25

26

27        [3] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224

28 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a disabled finding is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the past 15 years. 20 C.F.R. § 404.1560(b)(1)–(2). In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. ECF No. 26-2 at 259–68.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 27, 2010. *Id*. at 259.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: degenerative disc disease of the lumbar spine, bilateral knee joint arthralgia, hyperlipidemia, anxiety, and mood disorder. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 259–60.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform light work with the following exceptions: He can sit for 6 hours in an 8-hour workday; he can stand/walk for 6 hours in an 8-hour workday; he can lift/carry 20 pounds occasionally and 10 pounds frequently; he can occasionally climb ladders, ropes, ramps, and scaffolds; he can stoop, kneel, and crouch; he can adapt to routine changes in routine changes in work settings; he can have occasional contact with others; he must work in an area with no crowded spaces and no large groups of people; he is limited to performed unskilled work; and he should avoid even moderate exposure to hazards, dangerous moving machinery, and unprotected heights. *Id*. at 261.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. *Id*. at 266–67.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that he can perform. *Id*. at 267–68. Specifically, the ALJ found that Plaintiff can work as a housekeeper, assembler, or routing clerk. *Id*. at 268. The ALJ then concluded that Plaintiff was not under a disability at any time from September 27, 2010 through December 31, 2015, the date Plaintiff was last insured. *Id*.

**3.     Analysis**

**a. Whether the ALJ erred by not assigning "great" weight to the Department of Veterans Affairs' disability determination**

**i. The Department of Veterans Affairs' disability determination**

On July 18, 2014, the Department of Veterans Affairs ("VA") found Plaintiff, as a "[v]eteran of the Gulf War [e]ra[,]" 100 percent disabled and "unable to work due to [his] service connected disability/disabilities." ECF No. 26-1 at 156, 158. The VA found that Plaintiff is entitled to "individual unemployability . . . because [he is] unable to secure or follow a substantially gainful occupation as a result of service-connected posttraumatic stress disorder, tinnitus, and thoracolumbar spine degenerative disc disease." *Id*. at 159. In this decision, the VA noted that the disability determination was not "considered permanent" because "there is a likelihood of improvement[.]"

Nearly a year later, on June 1, 2015, the VA retroactively increased Plaintiff's disability with respect to his irritable bowel syndrome from 0 percent to 30 percent. *Id*. at 270. In this same decision, the VA also noted that Plaintiff's overall or combined disability rating was 90 percent, though the agency would pay him at a 100 percent rate because of his "[i]ndividual [u]nemployability." *Id*. This remained unchanged from the 2014 decision.

Then, on August 14, 2015, the VA found that Plaintiff was further disabled due to migraine and tension headaches. *Id*. at 268. Specifically, the VA noted that it changed its prior disability determination with respect to migraine and headaches from 0 percent disabling to 50 percent disabling. *Id*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ii. The ALJ's decision

The ALJ stated that, per the District Court's order, she was assigning "great" weight to the VA disability determination. ECF No. 26-2 at 266. But, at the same time, the ALJ noted that the VA's determination "is not dispositive" and "does not explain functional limitations arising out of those disabilities." *Id*. She further held that she was assigning "greater" weight to the state agency non-examining doctors than the VA treating physicians because of (1) Plaintiff's "severe substance abuse and binge drinking[;]" (2) his missed PTSD skills classes; (3) his failure to "keep mental health appointments[;]" (4) Plaintiff's "own description . . . that he could sustain concentration, persistence, and pace for simple tasks[;]" (5) his "marital problems, multiple girlfriends, continued binge drinking with DUIs and irregular attendance at PTSD resulting in termination from the PTSD program in July 2011[;]" and (6) state agency non-examining doctors' ability to consider non-military impairments that are "not included in the VA rating." *Id*. Finally, the ALJ found that even if Plaintiff's "limitations from severe alcohol abuse were excluded[,]" he "would still have severe but not disabling impairments." *Id*.

### iii. The parties' arguments

Plaintiff argues that the ALJ "failed to give great weight to the disability determination by the Veteran's Administration that determined that Plaintiff is . . . 100% disabled" despite being given "specific instructions" by the district judge to do so. ECF No. 32 at 2, 11–13. Plaintiff further argues that the ALJ failed to provide "persuasive, specific, or valid" reasons for discounting the VA's disability determination. *Id*. at 2.

The Commissioner agrees with Plaintiff, arguing that the ALJ erred with respect to how she weighed the VA's disability determination. ECF NO. 34 at 5–6.

In short, the parties agree that remand is proper because the ALJ erred in not giving great weight to the VA disability determination or providing persuasive, specific, or valid reasons

1    supported by the record for discounting the VA disability determination.[4] *See* ECF No. 32 at 2,

2    ECF No. 34 at 5–6.

3                      **iv. Whether the ALJ properly weighed the VA disability determination**

4           The Ninth Circuit holds "that in an SSD [Social Security disability] case an ALJ must

5    ordinarily give great weight to a VA determination of disability, reasoning that the two programs

6    have "marked similarit[ies]." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). But

7    despite their similarities, the programs are, nevertheless, different and, as such, "the ALJ may

8    give less weight to a VA disability rating if [the ALJ] gives persuasive, specific, valid reasons for

9    doing so that are supported by the record." *Id.* (citation omitted).

10          Here, the ALJ discounted the VA's 100 percent disability rating for several reasons, none

11   of which were "persuasive, specific, [or] valid." *See id.*

12          First, the ALJ discounted the VA's disability determination because it "does not explain

13   functional limitations arising out of those disabilities." ECF No. 26-2 at 266. This was not a

14   persuasive, specific, or valid reason because the Ninth Circuit has held that where the ALJ

15   distinguishe[s] the VA's disability rating on the general ground that the VA and SSA disability

16   inquiries are different, her analysis f[a]ll[s] afoul of [Ninth Circuit precedent given the marked

17   similarities between the two programs]." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

18   695 (9th Cir. 2009).

19          Additionally, the VA's disability determinations rely, in part, on disability benefits

20   questionnaires like the one completed on January 6, 2016. In that questionnaire, the examining

21   psychologist opined that Plaintiff's mental disorders cause "clinically significant distress or

22   impairment in social, occupational, or other important areas of functioning and that Plaintiff has

23   an "occupational and social impairment with deficiencies in most areas, such as work, school,

24   family relations, judgment, thinking and/or mood[.]" ECF No. 26-2 at 1170, 1174. This same

25   questionnaire further provides that Plaintiff has panic attacks, mild memory loss, impaired

26

27          [4] Plaintiff also argues that the ALJ's non-disability finding contradicts the vocational expert's
     testimony. ECF No. 32 at 14–15. The Court has reviewed this argument and determines that it does not
28   warrant discussion as it does not affect the outcome of the issues before the Court.

1   judgment, difficulty in establishing and maintaining effective work and social relationships,

2   difficulty in adapting to stressful circumstances, including work or work like setting, impaired

3   impulse control like unprovoked irritability with periods of violence, and intermittent inability to

4   perform activities of daily living. *Id*. at 1175.

5       Second, the ALJ discounted the VA's disability determination because the examining

6   state agency doctors can consider non-military impairments not included in the VA rating. *Id*. at

7   266. But this conclusory finding is not supported by the record. This is so because the VA rating

8   did consider non-military impairments but rejected them if they did not begin in "military

9   service" or were not "caused by some event or experience in service." *See* ECF No. 26-1 at 161.

10   As a result, this means that the VA's disability determination may not be as restrictive as the

11   SSA's given that the latter's disability determination not only considers (just as the VA's does)

12   but also can incorporate such impairments in its final disability determination. As such, this

13   reasoning was not persuasive, specific, or valid.

14       Third, the ALJ discounted the VA's disability determination because it is "clouded" by

15   Plaintiff's "severe substance abuse and binge drinking." *Id*. at 266. This reasoning was not

16   persuasive, specific, or valid. This is so because the VA found that Plaintiff suffers from PTSD

17   *with* alcohol use disorder and unspecified cannabis related disorder, noting that both mental

18   disorders related to Plaintiff's PTSD. *Id*. at 1166, 1168. This is to mean that the VA considered

19   Plaintiff's alcohol and cannabis use and found that it stemmed from and was caused by Plaintiff's

20   PTSD. The ALJ, however, appears to suggest otherwise, arguing that Plaintiff's alcohol and

21   cannabis use caused his PTSD. *Id*. at 266. Of note, although the VA found that "it is unclear at

22   this time to which extent the veteran's alcohol and cannabis use exacerbates his

23   symptomatology[,]" the agency did note that the "substance abuse is secondary to or aggravated

24   by a psychiatric disorder related to military service" and that Plaintiff's PTSD is "*not* attributable

25   to the physiological effects of a substance (e.g., medication, alcohol) or another medical

26   condition." *Id*. at 1169, 1174, 1176 (emphasis added). This analysis is significant because it tends

27   to show that the substance abuse is an effect—rather than the cause—of Plaintiff's PTSD.

28   Accordingly, the ALJ's reasoning was not persuasive, specific, or valid.

1    Fourth, the ALJ discounted the VA's disability determination because Plaintiff missed

2    PTSD skills classes and mental health appointments. ECF No. 26-2 at 266. But where, as here,

3    the evidence suggests that the lack of mental health treatment is partly due to a plaintiff's mental

4    health condition, it may be inappropriate to consider a plaintiff's lack of mental health treatment

5    when evaluating his failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465

6    (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the

7    exercise of poor judgment in seeking rehabilitation."); *see, e.g.,* ECF No. 26-2 at 957 (One of

8    Plaintiff's mental health providers—psychologist Meredith Avedon—noted that the "severity of

9    [Plaintiff's] symptoms as well as his lack of previous treatment may act as barriers" to obtaining

10   treatment.). As a result, the ALJ's reasoning was not persuasive, specific, or valid.

11   Fifth, the ALJ discounted the VA's disability determination because of Plaintiff's "own

12   description of functioning is that he could sustain concentration, persistence, and pace for simple

13   tasks[,]" citing to page seven of Exhibit 1A. *Id*. at 266. The exhibit to which the ALJ cited is a

14   disability determination explanation completed by a non-examining state agency doctor at the

15   initial level. Page seven of this exhibit includes the reviewing doctor Susan Kotler, Ph.D.'s

16   reasoning for denying Plaintiff's initial disability application, where Dr. Kotler writes that the

17   "C&P evaluation indicated [Plaintiff] could sustain CPP for at least simple tasks, which is

18   consistent with the claimant's own description of his functioning." ECF No. 26-1 at 84. Yet, on

19   the same page of this exhibit, Dr. Kotler references an adult function report completed by Plaintiff

20   where he writes that his ability to complete tasks and follow directions "'depends[.]'" *Id*.

21   Additionally, on page five of this same exhibit, Dr. Kotler references a medical record indicating

22   that Plaintiff "[n]eeds reminders to do things and take meds." *Id*. at 82. Moreover, the record

23   includes various progress notes providing that Plaintiff was "having difficulty concentration,"

24   suffering from "poor concentration," or missing medical appointments because of

25   "persistent impaired concentration[.]" *See, e.g.,* ECF No. 26-2 at 767, 806, 908. Given these

26   inconsistencies, the ALJ's choice to discount the VA's disability determination because of a

27   singular reference by a non-examining doctor that Plaintiff could sustain concentration,

28   persistence, and pace for simple tasks was not a persuasive, specific, or valid reason.

1   Finally, in what appears to be a catchall, conclusory explanation, the ALJ discounted the

2   VA's disability determination because "[t]reatment notes revealed he had marital problems,

3   multiple girlfriends, continued binge drinking with DUIs and irregular attendance at PTSD

4   resulting in termination from the PTSD program in July 2011[.]" ECF No. 26-2 at 266. It is

5   unclear to the Court how Plaintiff's marital problems or his multiple girlfriends justify

6   discounting the VA's disability determination. Additionally, the ALJ's representation as to the

7   record is not accurate in suggesting that Plaintiff was cited for multiple DUIs, as the record

8   supports only one arrest. *See* ECF No. 26-1 at 389, 416, 470. Even so, it also is unclear to the

9   Court how Plaintiff's DUI justifies discounting the VA's disability determination given the

10  agency's finding that alcohol use was an effect of Plaintiff's PTSD.

11  Further, while the ALJ is correct in noting that Plaintiff was terminated from the PTSD

12  program in July 2011[5] for missed classes, Plaintiff's PTSD diagnosis, as discussed above, played

13  a role in these missed classes. *See, e.g.,* ECF No. 26-1 at 502 (a letter written by psychiatrist Dr.

14  Goldman notes that Plaintiff "has persistent impaired concentration which has also resulted in his

15  missing several medical appointments"). Additionally, the record supports that Plaintiff continued

16  to treat with Dr. Goldman from December 2010 through at least June 2019, though with multiple

17  missed appointments, and successfully completed a four-week addiction program in August 2019.

18  *See, e.g.,* ECF No. 26-2 at 544, 563. Accordingly, the ALJ's reasoning was not persuasive,

19  specific, or valid.

20  In short, for the reasons discussed above, the ALJ erred because her reasons for

21  discounting the VA's disability determination were not persuasive, specific, or valid.

22  The next question for the Court, therefore, is whether this error is harmless. An error is not

23  harmless unless the reviewing court "can confidently conclude that no ALJ, when fully crediting

24  the [evidence], could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

25

26

27  ⁵ Plaintiff returned from his tour in Iraq, where he experienced "combat exposure," in 2010. ECF No. 26-1 at 544. Additionally, progress notes provide that Plaintiff stopped attending the PTSD program classes because the other attendees were Vietnam War veterans and he was the only Gulf War (i.e., Operation Enduring Freedom/Operation Iraqi Freedom) veteran. *Id.* at 387–88, 548.

28

Here, the Court is not confident that no ALJ could have reached a different disability

determination had the VA disability determination been credited.

### b. Whether the Court should remand for further proceedings or for an award of benefits

#### i. The parties' arguments

Although both parties agree that the ALJ erred with respect to discounting the VA's

disability determination, they disagree on whether the Court should remand for further

proceedings or for benefits. Plaintiff argues that the Court should remand for benefits,

highlighting the ALJ's errors, the fully developed record, and the effect of the VA's 100 percent

disability determination when credited as true. ECF No. 32 at 15–17, ECF No. 37 at 2–5.

Conversely, the Commissioner argues that the ALJ's errors require the Court to remand for

further proceedings—rather than remanding for a determination of benefits. ECF No. 34 at 5–6,

8–12. The Commissioner reasons that additional proceedings are necessary so that a new[6] ALJ

can review the case, "obtain psychological or psychiatric expert evidence[,] reassess Plaintiff's

substance abuse consistent with Social Security Ruling (SSR) 13-2p[,] reassess the opinions of

the record[,] reevaluate Plaintiff's 100% VA rating consistent with the prior court order[,]

reassess Plaintiff's residual functional capacity[,] and proceed with the sequential evaluation as

necessary." *Id*. at 5–6. According to the Commissioner, remanding for additional proceedings

would be "useful," although doing so would result in a second remand and delay. *Id*. at 11–12.

#### ii. Whether to remand for further proceedings or for benefits

"The decision whether to remand a case for additional evidence, or simply to award

benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When a court reverses an ALJ's

decision for error, the court "ordinarily must remand to the agency for further proceedings." *Leon*

*v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for

---

[6] The same ALJ—Cynthia R. Hoover—issued both unfavorable disability determinations. *See* ECF No. 26-1 at 13–29 and ECF No. 26-2 at 254–68.

1    additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

2    1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has

3    "stated or implied that it would be an abuse of discretion for a district court not to remand for an

4    award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th

5    Cir. 2014) (citations omitted).

6         These three conditions, established by the Ninth Circuit, are known as the credit-as-true

7    standard. Under this standard, a court will remand for an award of benefits (1) where the record

8    has been fully developed and further administrative proceedings would serve no useful purpose;

9    (2) where the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether

10   claimant testimony or medical opinion; and (3) where the ALJ would be required to find the

11   claimant disabled on remand if the improperly discredited evidence were credited as true. *Revels

12   v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). But even where the three prongs have been

13   satisfied, a court will not remand for immediate payment of benefits if "the record as a whole

14   creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

15        Here, the Court finds that each of the credit-as-true factors is satisfied and that remand for

16   the calculation and award of benefits is warranted.

                              **a.   The record is fully developed.**

18        As to the first element, administrative proceedings are generally useful where the record

19   "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts

20   and ambiguities, *Andrews*, 53 F.3d at 1039, or the "presentation of further evidence . . . may well

21   prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002).

22        Here, the record has been fully developed and further administrative proceeding serve no

23   useful purpose. The record is filled with hundreds of pages of medical evidence from VA doctors

24   documenting medical visits beginning in 2010 and lasting through 2019. *See Trevizo v. Berryhill*,

25   871 F.3d 664, 682 (9th Cir. 2017) (noting a record is extensive where it totaled hundreds of pages

26   and included treatment notes documenting over 50 doctor visits, a number of questionnaires

27   completed by the plaintiff, and responses from her granddaughter that supported the plaintiff's

28

impairments). Aside from several ER visits to Centennial Hills Hospital, Plaintiff's medical treatment for his physical and mental health impairments has been exclusively with VA doctors. *See* ECF Nos. 26-1 and 26-2.

Additionally, Dr. Herbert Goldman, M.D., a board-certified psychiatrist, has treated Plaintiff from at least December 27, 2010 through at least June 27, 2019. *See* ECF No. 26-2 at 67, 563. Throughout this nearly decade-long relationship, Dr. Goldman has consistently diagnosed Plaintiff with "clear cut" PTSD despite relatively normal mental status examination findings.[7] *See, e.g.,* ECF No. 26-2 at 588 (November 1, 2018 visit), 688 (February 17, 2016 visit), 697 (August 28, 2015 visit), 767 (May 21, 2014 visit), 862 (November 14, 2012 visit), 871 (September 13, 2012 visit), 880 (May 16, 2012 visit), 888 (December 12, 2011 visit), 907 (November 3, 2011 visit), 933 (July 13, 2011 visit), 1037 (December 27, 2010 visit). In addition to his progress notes, Dr. Goldman also provided at least three letters over three occasions—2011, 2015, and 2019—where he opines that Plaintiff has PTSD, is "totally disabled[,]" and is "need of continued ongoing psychiatric treatment." *Id.* at 251, 563, 908. In his most recent letter dated June 27, 2019, Dr. Goldman stated that he does "not anticipate any significant improvement and would consider his condition to be permanent and stationary." *Id.* at 563.

Further, other VA doctors—aside from Dr. Goldman—have consulted with Plaintiff and assessed him with PTSD. For example, in 2011, psychologist Meredith Avedon opined that Plaintiff "positively endorsed all symptoms necessary to meet diagnostic criteria for PTSD" and had a GAF score of 50.[8] *See* ECF No. 26-2 at 931, 957, 1029. And, in 2013, writing in a VA disability questionnaire relating to Plaintiff's mental health impairments, clinical psychologist Joseph White noted that he agreed with Dr. Goldman's assessment that Plaintiff has PTSD:

---

[7] With respect to the mental status examination findings, Dr. Goldman would typically note that Plaintiff's affect was appropriate, Plaintiff had normal speech rate, Plaintiff was appropriately dressed and groomed, and Plaintiff denied suicidal ideation. Yet, Dr. Goldman would also note that Plaintiff has PTSD, citing, among other, Plaintiff's impaired concentration, irritability, and continued experience of nightmares. *See, e.g.,* ECF No. 26-2 at 702, 767, 1037.

[8] A GAF, or Global Assessment of Functioning, score is "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison*, 759 F.3d at 1002 n.4 (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). "According to the DSM-IV [Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition], a GAF score between 41 and 50 describes serious symptoms or any serious impairment in social, occupational, or school functioning." *Garrison*, 759 F.3d at 1002 n.4.

1   "[Plaintiff] carries a diagnosis of PTSD from mental health. After a detailed inquiry it is my

2   impression that he has at least some symptoms of PTSD, especially intrusive memories,

3   irritability, alienation, and some hypervigilant behavior." ECF No. 26-2 at 830. Dr. White opined

4   that "many" of these issues predate Plaintiff's time in Iraq but, nonetheless, "[f]or compensation

5   purposes I believe that the current diagnosis is correct, and that his anxiety symptoms should be

6   construed as part of his mood disorder."[9] *Id*. Moreover, in 2016, psychologist Amilie Dubois

7   opined that Plaintiff

8   
9   
10
11
12
> "experiences symptoms consistent with a diagnosis of Posttraumatic Stress Disorder,"
> noting that his symptoms included "sleep disturbances, nightmares, physiological
> responses to anxiety, fatigue, intrusive memories, flashbacks, feeling detached and
> estranged from others, difficulties with attention and concentration, mild memory
> struggles, irritability, verbal aggression, hyper-vigilance, hyper-arousal, exaggerated
> startled response, panic attacks, persistent negative emotional state, loss of interest in
> pleasurable activities, difficulties experiencing positive emotions, impaired judgment,
> reckless behaviors, and self-blame."

13   *Id.* at 1177. Dr. Dubois further opined that Plaintiff's PTSD diagnosis and symptoms "are

14   clinically significant and impair the veteran's social and occupational funding." *Id*.

15          Furthermore, this case has involved two hearings before the same ALJ. The District Court

16   identified the ALJ's error with respect to how she weighed the VA's disability determination and

17   directed the ALJ to assign "great" weight to this VA determination. While the ALJ assigned great

18   weight to the VA disability determination, she detracted its weight without providing persuasive,

19   specific, or valid reasons supported by the record. Additionally, Plaintiff's case has been pending

20   for nearly eight years. *See Trevizo*, 871 F.3d at 683 (finding that "exceptional facts," including the

21   fact that Plaintiff's application had been pending more than seven years, meant further

22   proceedings would be unduly burdensome) (citations omitted).

23   
24   

25   
26   
27   
28   

        [9] Of note, Dr. White writes in the same questionnaire that "[w]hile in my office [Plaintiff] did not appear to
be so distressed, anxious, or irritable as to be unable to work in low stress settings, and he appeared cognitively
capable of following at least simple directions." ECF No. 26-2 at 837. But he adds that Plaintiff's "ability to function
consistently over time is unknown, and could be limited by emotional volatility and by alcohol abuse." *Id*. Dr.
White's opinion regarding Plaintiff's future functional limitations are supported by Dr. Goldman's progress notes,
where the latter indicates that Plaintiff suffers from irritability, and psychologist Melissa Lavan's progress notes
indicating that Plaintiff completed phase one of a two-phase addiction psychiatry counseling program for his alcohol
dependence caused by his PTSD. ECF No. 26-1 at 347 and ECF No. 26-2 at 544–45.

Finally, although the Commissioner argues that further proceedings would be useful in allowing the ALJ to re-weigh the VA's disability determination, analyze Plaintiff's substance abuse issues, and address the opinions of two medical providers whose findings could likely result in a more restrictive RFC, "Ninth Circuit precedent and the objectives of the credit-as-true" standard, as noted in the *Garrison* holding, "foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison*, 759 F.3d at 1021.

**b.   The ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence.**

As discussed above, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting the VA's finding that Plaintiff is 100 percent disabled. Therefore, the second prong of the credit-as-true rule is met.

**c.   If the improperly discredited VA's 100 percent disability determination were credited as true, the ALJ would be required to find Plaintiff disabled.**

The third prong of the credit-as-true rule is satisfied because, giving great weight to the VA disability rating, a finding of disability is required. *See McCartey*, 298 F.3d at 1077.

**d.   There is no "serious doubt" that Plaintiff is disabled.**

Finally, there is no "serious doubt" based on the record that Plaintiff is, in fact, disabled given the VA's 100 percent disability determination, his PTSD, and the combination of his other physical and mental health impairments. *See Trevizo*, 871 F.3d at 683.

//
//
//
//
//
//
//
//

1

**III.     CONCLUSION AND ORDER**

2          Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment

3   (ECF No. 32) is GRANTED. The case is remanded for a calculation and award of benefits.

4          **IT IS FURTHER ORDERED** that the Commissioner's motion to remand and response

5   to Plaintiff's motion for summary judgment (ECF Nos. 33, 34) is DENIED.

6          **IT IS FURTHER ORDERED** that the Clerk of Court is directed to close the case.

7

8          DATED: September 20, 2021

9                                                    _____

10                                                   BRENDA WEKSLER
                                                     UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28